**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 10-cv-00455-REB–MJW

TERESA HERNANDEZ,

    Plaintiff,

v.

VALLEY VIEW HOSPITAL ASSOCIATION, and
MORRISON MANAGEMENT SPECIALISTS, INC., d/b/a Morrison Healthcare Food Services,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

The matter before me is **Defendants' Motion for Summary Judgment (Corrected)** [#65],[1] filed February 11, 2011. I grant the motion.[2]

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material

---

[1] "[#65]" is an example of the convention I use to refer to the docket number of a motion or order, and will be used throughout this Order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999).

## III.  ANALYSIS

Plaintiff, a Latina of Mexican origin, worked at Valley View Hospital Association[3] ("Valley View" or "the hospital") in Glenwood Springs, Colorado, in the Food Services department.  Plaintiff's supervisors were Marc Lillis, Food Services Director, and Nicholas Stillahn, Executive Chef.  With the exception of the period between July, 2005, and October, 2006,[4] plaintiff worked in Food Services throughout her tenure at the hospital.

Plaintiff claims that her supervisors treated Latino employees less favorably than whites.  For example, she claims Lillis questioned Latino employees about whether they had paid for bottled drinks taken from the cafeteria on the hospital's honor policy, while white employees were never questioned.  Similarly, plaintiff alleges that in March, 2007, when her brother and nephews joined her for lunch in the cafeteria, Lillis questioned her as to whether they had paid for their lunches.  In another example, plaintiff recalls Stillahn chastising a Latina co-worker for wearing non-conforming shoes to work, whereas a white co-worker who wore improper footwear escaped his notice.

Plaintiff alleges also that Lillis and Stillahn made offensive jokes and comments about Latinos.[5]  In August, 2006, while viewing prom photos of plaintiff's son, Lillis

---

[3] Defendant Morrison Management Specialists, Inc. ("Morrison"), provided dining services to Valley View and employed the managers responsible for overseeing the Food Service Department.

[4] During that time frame, plaintiff worked in the Sterile Processing department as a technician, where she had been transferred at her request.  After plaintiff was placed on a 30-day probation in September, 2006, for failing to consistently perform her duties in that department, she accepted Lillis's offer to return to Food Services.

[5] For example, plaintiff alleges that Lillis and Stillahn would ask rhetorically "Do you know why Mexicans don't barbeque?"  "Because the beans go through the grill."  They joked also that Mexicans and Latinos made tamales for Christmas "[s]o that they can having something to unwrap."

3

allegedly remarked, "Only a Latino would wear tennis shoes to the prom." In another instance, Lillis allegedly brushed off plaintiff's suggestion that a co-worker's scolding her for not putting ice in fountain drinks, saying "[y]ou're not in Mexico," was racist. Plaintiff recalls also that in December, 2006, Stillahn complained to her about being on call on Christmas Day, saying, "Of course, my hair is not black," meaning that he was not Latino. Finally, plaintiff alleges that in June, 2007, Stillahn and Lillis both made offensive, racist comments to her when a story about a man who allegedly murdered his nephew appeared in the local paper. Stillahn and Lillis allegedly asked plaintiff repeatedly over the course of the day whether the man, whose surname also was Hernandez, was her son or brother, including one instance when they loudly called out to her across the cafeteria.

Matters came to a head on July 20, 2007, when Lillis accused plaintiff of not properly cleaning up after the end of her shift the previous day. Although plaintiff did not respond to Lillis's accusations, when Stillahn subsequently voiced similar complaints to plaintiff about the condition in which she left the cafeteria, she responded, "Well, maybe I'm not white enough." Later that morning, Lillis confronted plaintiff, and she admitted she had made the comment. Lillis sent her home for the remainder of the day. Human Relations Coordinator Nikki Norton later confirmed the half-day suspension for which plaintiff lost approximately three and one-half hours' pay.

Although plaintiff was scheduled to work the next two days, she did not return to the hospital on July 21 or 22. Due to plaintiff's failure to report for work as scheduled, she was placed on unpaid administrative leave until July 30, when she met with Lillis, Norton, and Human Resources Director, Daniel Biggs. At that meeting, plaintiff

explained that she had been confused as to the length of her suspension, and Biggs, therefore, did not take disciplinary action against her for the unexcused absences. Biggs declined her request to be reassigned to another department due to a lack of available positions for which she was qualified and concerns about her work and behavior in connection with the July 19 and 20 incidents. Nevertheless, he welcomed her to let him know of her interest in any open positions within the hospital. Plaintiff then acknowledged that she had been under stress because her mother was ill, and Norton suggested the possibility of Family and Medical Leave Act (FMLA) leave. Plaintiff elected to take FMLA leave through October 15, 2007. While on leave, plaintiff applied for only one of the open positions for which she alleges she was qualified. She was not hired for that position.[6]

On October 12, plaintiff met with Lillis and Biggs to discuss her imminent return to work. Plaintiff again requested a transfer to a different department, and again was advised that she could apply for any open position within the hospital for which she was qualified. During this meeting it was made clear to plaintiff that she was expected to return to work on October 15, and she acknowledged that she would return. Nevertheless, plaintiff failed to report to work on October 15, instead leaving Lillis a voicemail saying that she "had something to do." Nor did she return Norton's calls. When plaintiff still had not reported to work on October 18, Biggs sent her a letter terminating her employment.

---

[6] The hospital claims it has no record of plaintiff having applied for any position while on FMLA leave. Nevertheless, the position that plaintiff acknowledges applying for was in the Sterile Processing department, where her prior probationary status would have disqualified her from consideration in any event. (*See supra*, note 3.)

Plaintiff subsequently filed this lawsuit, alleging causes of action for racial and national origin discrimination as well as for hostile work environment racial and national origin harassment.[7] Because plaintiff has failed to present evidence sufficient to create a genuine issue of material fact as to these claims, however, defendants are entitled to summary judgment.

Plaintiff's primary claim is for hostile work environment racial and national origin harassment. A hostile work environment claim requires proof sufficient for a "rational jury [to] find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ***MacKenzie v. City and County of Denver***, 414 F.3d 1266, 1280 (10th Cir. 2005) (quoting ***Penry v. Federal Home Loan of Topeka***, 155 F.3d 1257, 1261 (10th Cir. 1998), **cert. denied**,. 119 S.Ct. 1334 (1999)) (internal quotation marks omitted; alterations in original). This standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of [racial] jokes, and occasional teasing," and, thus, to prevent Title VII from becoming "trivialized as a civility code." ***Id.*** Whether this standard is met requires consideration of the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." ***Id.*** In addition, the environment must be both objectively and

---

[7] A separate claim for retaliation was dismissed as barred by limitations. (**See Order Granting Motions To Dismiss Third Claim for Relief** [#62] filed December 14, 2010.)

subjectively hostile or abusive. *Id.*

Setting aside the issue of whether the affidavit plaintiff submits in support of her response to the motion for summary judgment constitutes an attempt to create a sham fact issue, *see Burns v. Board of County Commissioners of Jackson County*, 330 F.3d 1275, 1281-82 (10th Cir. 2003), and even if I consider all incidents related in that affidavit, they are insufficient as a matter of law to create a genuine issue of material fact as to whether plaintiff's work environment was objectively hostile. This evidence demonstrates that plaintiff's supervisors were boorish, infantile, and unprofessional. It does not, however, evidence the "steady barrage of opprobrious racial comments" required to make out an actionable hostile work environment claim. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994), *cert. denied*, 116 S.Ct. 92 (1995); *see also Bronakowski v. Boulder Valley School District*, 549 F.Supp.2d 1269, 1278 (D. Colo. 2008), *aff'd*, 294 Fed. Appx 408 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1364 (2009), *and cert. denied*, 129 S.Ct. 2048 (2009). Instead, plaintiff relates a handful of racially insensitive jokes and comments over a period of more than three years. Such sporadic comments, while not laudable, will not support a claim for hostile work environment racial or national origin harassment.

Plaintiff's allegations regarding insensitive jokes about Latinos and the general difference in treatment between Latino and white employees with regards to paying for drinks does not change the result. Plaintiff provides few specifics to support these allegations, *see Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (plaintiff's unsubstantiated assertion that he was "continuously subjected to racial slurs," made

"without reference to specific dates or circumstances" not sufficient to overcome motion for summary judgment), and indeed, it is not clear whether any of the jokes or the questioning about drink purchases was directed toward her personally, *see Musungayi v. Whirlpool Corp.*, 401 Fed. Appx. 346, 349 (10th Cir. Nov. 4, 2010) (allegedly racists comments that "were not directed at [plaintiff] and did not disadvantage him" found insufficient to state actionable harassment claim), *cert. denied*, 131 S.Ct. 1609 (2011).[8]

Having failed to produce evidence sufficient to make out a claim of hostile work environment racial harassment, plaintiff perforce cannot sustain the more onerous burden of proving a racial or national origin discrimination claim premised on constructive discharge. To prove such a claim, plaintiff must prove both the existence of a hostile work environment and "something more," that is, that her "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004). *See also Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004) (noting that test is objective, "under which neither the employee's subjective views of the situation, nor her employer's subjective intent . . . are relevant"). The burden of proving a constructive discharge claim accordingly has been characterized as "substantial," *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007), and plaintiff's failure to clear the hurdle of proving a hostile work environment in the first instance makes it impossible for her to meet that heightened burden here.

---

[8] It is clear, however, that the incident involving the non-conforming shoes did not involve plaintiff at all.

Finally, plaintiff fails to produce sufficient evidence to create a genuine issue of material fact regarding racial or national origin discrimination related to her half-day suspension on July 20, 2007, and the associated unpaid administrative leave that followed.[9]  Specifically, plaintiff presents no evidence suggesting that the hospital's legitimate, nondiscriminatory reason for her suspension was a pretext for race or national origin discrimination.

Plaintiff was suspended for her unprofessional and inappropriate comments to her immediate supervisor, and for lying about the condition in which she had left her work station the previous afternoon.  Although she disputes that she did not clean up properly the previous day, she offers nothing to suggest that Stillahn and Lillis did not honestly believe that she had failed to do so.  **See Rivera v. City and County of Denver**, 365 F.3d 912, 924-25 (10th Cir. 2004) (pertinent question regarding pretext is not "whether the employer's proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs") (citation, internal quotation marks, and alterations omitted).  There is no evidence suggesting that this explanation was contrived or manufactured or was otherwise so weak, implausible, inconsistent, incoherent, or contradictory as to allow a jury to conclude that it is unworthy of credence.  **See Pastran v. K-Mart Corp.**, 210 F.3d 1201, 1206 (10th Cir.

---

[9]  Given the broad definition of "adverse employment action" in this circuit, I will assume without deciding that the half-day suspension, and associated loss of pay, constitute adverse employment actions.  **See Hillig v. Rumsfeld**, 381 F.3d 1028, 1031 1033 (10th Cir. 2004) (although 'a mere inconvenience or an alteration of job responsibilities,' is not an adverse employment action," term encompasses any action "*materially* adverse to the employee's job status") (citations and internal quotation marks omitted; emphasis in *Hillig*).  **Cf. Embry v. Callahan Eye Foundation Hospital**, 147 Fed. Appx. 819, 829 (11th Cir Aug. 23, 2005) (noting that only employment actions that create "a serious and material change in the terms, conditions, or privileges of employment" are adverse employment actions, and that loss of compensation of $88.73 therefore was not actionable) (citation and internal quotation marks omitted).

2000). Moreover, plaintiff neither denies making the "Maybe I'm not white enough" comment nor proffers anything to suggest that similarly situated non-Latino employees were not suspended or disciplined less harshly in comparable circumstances. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000); *Elmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995); *Richardson v. Topeka Metropolitan Transit Authority*, 987 F.Supp. 887, 891-92 (D. Kan. 1997).

In the final analysis, plaintiff is left to rely on her general allegations regarding Lillis's and Stillahn's racially tinged comments and jokes. However, "isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1281 (10th Cir. 2003). Plaintiff has failed to demonstrate any nexus between these comments and the suspension decision. *See Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994).

Therefore, I find and conclude that plaintiff has failed to demonstrate a genuine issue of material fact with respect to at least one essential element of each of her remaining claims in this lawsuit. Accordingly, defendants' motion for summary judgment will be granted.

### IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Summary Judgment (Corrected)** [#65], filed February 11, 2011, is **GRANTED**;

2. That plaintiff's claims for race and national origin discrimination in her

suspension and termination, asserted in the **Amended Complaint** [#33], filed September 23, 2010, as Count One: Employment Discrimination – Race/National Origin – Supervisor – Tangible Employment Act, as well as her claim for hostile work environment racial and national origin harassment, asserted in the **Amended Complaint** [#33], filed September 23, 2010, as Count Two: Hostile Work Environment, are **DISMISSED WITH PREJUDICE**;

    3. That judgment **SHALL ENTER** on behalf of defendants, Valley View Hospital Association and Morrison Management Specialists, Inc., d/b/a Morrison Healthcare Food Services, against plaintiff, Teresa Hernandez, as to plaintiff's claims for race and national origin discrimination in her suspension and termination, asserted in the **Amended Complaint** [#33], filed September 23, 2010, as Count One: Employment Discrimination – Race/National Origin – Supervisor – Tangible Employment Act, as well as her claim for hostile work environment racial and national origin harassment, asserted in the **Amended Complaint** [#33], filed September 23, 2010, as Count Two: Hostile Work Environment, in accordance with this Order;

    4. That judgment further **SHALL ENTER** on behalf of defendants, Valley View Hospital Association and Morrison Management Specialists, Inc., d/b/a Morrison Healthcare Food Services, against plaintiff, Teresa Hernandez, as to Count Three: Retaliation for Activity Protected by Title VII, in accordance with my **Order Granting Motions To Dismiss Third Claim for Relief** [#62], filed December 14, 2010;

    5. That the trial, currently scheduled to commence on Monday, May 2, 2011, is **VACATED**; and

6.  That defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated April 26, 2011, at Denver, Colorado.

BY THE COURT:

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge