FILED
United States Court of Appeals
Tenth Circuit

PUBLISH

June 26, 2012

UNITED STATES COURT OF APPEALS

Elisabeth A. Shumaker
Clerk of Court

TENTH CIRCUIT

---

TERESA HERNANDEZ,

        Plaintiff-Appellant,

v.

        No. 11-1244

VALLEY VIEW HOSPITAL
ASSOCIATION,

        Defendant-Appellee,

and

MORRISON MANAGEMENT
SPECIALISTS, INC., d/b/a Morrison
Healthcare Food Services,

        Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CV-00455-REB-MJW)

---

Submitted on the briefs:[*]

Theodore G. Hess, Hess & Schubert, LLP, Glenwood Springs, Colorado, for
Plaintiff-Appellant.

---

    [*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

Michael C. Santo, Bechtel & Santo, LLP, Grand Junction, Colorado, for Defendant-Appellee.

---

Before **KELLY**, **MURPHY**, and **MATHESON**, Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

Teresa Hernandez sued Valley View Hospital Association for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e17.[1]  The district court granted summary judgment for Valley View on Ms. Hernandez's claims for hostile work environment and constructive discharge, and dismissed her retaliation claim as time-barred.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse on the hostile work environment and constructive discharge claims and affirm on the retaliation claim.

---

[1]Pursuant to Fed. R. App. P. 42(b), the parties stipulated to dismiss the appeal as to defendant Morrison Management Specialists, Inc.  *See* No. 11-1244, Order of Sept. 15, 2011.

-2-

# I. BACKGROUND

A. *Factual History*[2]

Ms. Hernandez, a Latina of Mexican origin, began working in 2001 at Valley View in the food services department.  Marc Lillis and Nicholas Stillahn started supervising her in November 2004 and March 2005, respectively. Ms. Hernandez transferred out of food services in June 2005, but returned in October 2006.  As discussed in detail below, Ms. Hernandez alleges that during the time Mr. Lillis and Mr. Stillahn supervised her, they frequently made racially derogatory jokes and comments about Latinos and Mexicans, and continued to do so despite her complaints to them that their remarks were offensive.

Ms. Hernandez provided the following examples in her discovery responses and at her deposition:

- Although Ms. Hernandez was not able to recall some dates, the racial joke Mr. Lillis repeated most often was to ask Mr. Stillahn, "[D]o you know why Mexicans don't BBQ?," and when Mr. Stillahn asked "[W]hy[?]," Mr. Lillis answered, "[B]ecause the beans go through the grill."  Aplt. App. at 298, 427.

---

[2]On an appeal from summary judgment, "we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party," without making credibility determinations or weighing the evidence.  *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (internal quotation marks omitted).  The facts are presented accordingly.

- Mr. Lillis and Mr. Stillahn repeated another racial joke several times, once in December 2006: "[D]o you know why Mexicans and Latinos make tamales for Christmas? So they can have something to unwrap." *Id*. at 298, 427.

- Her supervisors repeated these and other racial jokes before and after her transfer. *Id*. at 299 (testifying Mr. Lillis made the barbeque joke three to five times); 302-03 (made the tamale joke three or four times); 427 (listing these as examples of the racial jokes). Ms. Hernandez repeatedly complained to Mr. Lillis and Mr. Stillahn that these jokes and comments were racist, inappropriate, and not nice. *Id*. at 301-03, 305-07.

- In June 2005, Barbara, a non-Latina co-worker, told the other employees, in front of Mr. Lillis, to "put ice in the cups. You're not in Mexico anymore." *Id*. at 300-01, 332. Ms. Hernandez told Mr. Lillis this remark was racist and that she was offended by it because she was from Mexico. *Id*. at 302. He laughed and said, "She's not talking about you. She's talking about a country." *Id*. Ms. Hernandez replied that she came from that country; Mr. Lillis answered, "Well, you're a citizen of the United States." *Id*.

- In August 2006, Mr. Lillis laughed at Ms. Hernandez's son's prom photo and said that only a Latino would wear tennis shoes to a prom. *Id.* at 303.

- In December 2006, Mr. Stillahn complained about having to work Christmas Day when Latino workers were going to be off, saying "Of course. My hair is not dark." *Id.* at 232. When Ms. Hernandez asked what he meant, he said, "I'm not a Latino." *Id.* She complained about this remark to Paul Tapia, another supervisor, who told her the remark was not racist. *Id.*

- In March 2007, when Ms. Hernandez's family members joined her for lunch, Mr. Stillahn asked her if they had paid for their lunches. When she said "yes," he challenged her because he had not seen her at the register. *Id.* at 233, 327. She told Mr. Stillahn that she thought he was being racist because some of her family are African-American, and she told him he could check the camera at the register.

- Every time he saw a Latino worker get a drink, Mr. Stillahn asked if they had paid for it, but he never asked that of a non-Latino worker. *Id.* at 234. Ms. Hernandez repeatedly complained to Mr. Lillis about this, but he never responded. *Id.* at 235.

- Mr. Stillahn chastised a Latino worker for wearing non-conforming shoes, but he said nothing to a white employee who did the same. *Id*. at 235-36.

- One day in June 2007, Mr. Lillis repeatedly asked Ms. Hernandez if, or made the accusation that, an accused murderer in the news with the Hernandez surname was her son or brother. *Id*. at 230-31. He asked this question every time he walked by her, at least five times, in front of others. *Id*. at 230-31, 428. She told Mr. Lillis she was unrelated to the murderer and that "[j]ust because my name is Hernandez and just because I'm a Latino doesn't mean my son murdered that guy." She repeatedly told him that his remark upset her, made her uncomfortable, and was racist. *Id*.

Ms. Hernandez testified that on July 20, 2007, Mr. Stillahn angrily yelled at her that the cafeteria had "looked like shit" the day before and then "started screaming." Aplt. App. at 238. Ms. Hernandez responded, "Well, maybe I'm not white enough." *Id*. She said Mr. Stillahn "got even more upset" and pushed a cart and kicked a door. *Id*. When she confirmed to Mr. Lillis that she had made that remark, he told her to go home.

That afternoon, Nikki Norton, Valley View's Human Resources Coordinator, told Ms. Hernandez she was being suspended for making the "not white enough" comment. Ms. Hernandez asked Ms. Norton why she was

being suspended for her comment when a non-Latina co-worker, Barbara, was not disciplined for making a remark Ms. Hernandez had complained at the time was racist and offensive to Mexicans. *Id.* at 317, 303-02. Ms. Hernandez told Ms. Norton about the racist jokes and comments that Mr. Lillis and Mr. Stillahn often made. *Id.*

That same day, Ms. Norton sent an email to Valley View's Administrative Director of Human Resources, Daniel Biggs, stating that Mr. Lillis and Mr. Tapia wanted to fire Ms. Hernandez because they "didn't want that type of person working here." *Id.* at 573. She told Mr. Biggs that she agreed Ms. Hernandez should be fired and told Mr. Lillis he first had to "get his ducks in a row' and write [Ms. Hernandez] up for job performance issues." *Id.* Ms. Norton further stated she would pull Ms. Hernandez's personnel file to see if there were other write-ups. *Id.* at 574.

Ms. Hernandez met with Mr. Lillis and Mr. Biggs on July 30, 2007, and asked to be reassigned to any other position at Valley View outside of food services because she did not feel safe working in the kitchen given how angry Mr. Stillahn had been. *Id.* at 247-48. Mr. Biggs denied her transfer request but offered her leave under the Family and Medical Leave Act (FMLA) until October 15, 2007, which Ms. Hernandez accepted.

Mr. Biggs met with Ms. Hernandez on October 12, 2007, to discuss "performance concerns raised with [Ms. Hernandez] but never formally documented." *Id.* at 572. Ms. Hernandez again requested a transfer to any position at Valley View other than food services, which Mr. Biggs denied. When Ms. Hernandez failed to return to work by October 18, 2007, Mr. Biggs terminated her employment.

B.   ***Procedural History***

After exhausting her administrative remedies and obtaining a notice of right to sue from the Equal Employment Opportunity Commission (EEOC), Ms. Hernandez filed a complaint against Valley View claiming racial and national origin discrimination based on a hostile work environment and constructive discharge. In an amended complaint, she claimed retaliation.

Valley View moved for summary judgment. Ms. Hernandez submitted an affidavit from herself and one from a Latina co-worker, Raquel Nunez. In her affidavit, Ms. Hernandez gave another example of a racial joke, stating Mr. Lillis asked, "[d]o you know why blacks and Latino[s] never get married? . . . Well, blacks are lazy, and Latinos steal. So if they got married, a black Latino would be too lazy to steal." *Id*. at 552. She also stated that Mr. Stillahn and Mr. Lillis referred to a black cook using a racial epithet. *Id*. It is unclear from Ms. Hernandez's affidavit if she heard the latter reference or if she was relying on Ms. Nunez's affidavit.

-8-

Ms. Nunez stated in her affidavit that Mr. Lillis called the black cook a

racial epithet, made fun of him, and excluded him from meetings. *Id*. at 563.

Ms. Nunez stated that Mr. Lillis often questioned Latino workers if they had paid

for their bottled drinks but never questioned white employees. *Id*. at 563-64.[3]

The district court granted summary judgment for Valley View on

Ms. Hernandez's hostile working environment claim. It characterized

Ms. Hernandez's evidence as only "a handful of racially insensitive jokes and

comments over a period of more than three years," which, "while not laudable,"

would not support a racial or national origin hostile work environment claim.

Aplt. App. at 613. It held the evidence demonstrated that Ms. Hernandez's

supervisors were "boorish, infantile, and unprofessional," but ruled that she failed

---

[3]We reject Valley View's argument that the district court should have
disregarded the affidavits submitted in Ms. Hernandez's response as "sham
affidavits." *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (stating
"courts will disregard a contrary affidavit when they conclude that it constitutes
an attempt to create a sham fact issue"). To be disregarded as a sham, an
affidavit must contradict prior sworn statements. *See Law Co., Inc. v. Mohawk
Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009).
Ms. Hernandez's affidavit does not contradict her prior deposition testimony.
She did not testify, as Valley View claims, that she heard only two jokes. At her
deposition, Valley View asked her to describe Mr. Lillis's racial jokes. She
described the barbeque and tamale jokes and "[s]tuff like that." Aplt. App.
at 298. Valley View's counsel then asked her to describe other jokes. She
answered: "So many. It's like - just remembering makes me -" at which point
Valley View's counsel interrupted her answer. *Id*. at 299. Ms. Hernandez's
testimony reflects that she described the barbeque and tamale jokes as examples.
Her affidavit and Ms. Nunez's provided additional examples that did not
contradict her testimony.

to present evidence of a "'steady barrage of opprobrious racial comments.'" *Id.* (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (holding that a plaintiff does not make a sufficient showing of a pervasively hostile work environment with a few isolated incidents, but must show "a steady barrage of opprobrious racial comments") (internal quotation marks omitted)).  The district court stated Ms. Hernandez provided "few specifics" to support her allegations of insensitive jokes and disparate treatment, noting it was unclear if the jokes or the questions about paying for drinks were directed at Ms. Hernandez personally. Aplt. App. at 613-14.

The district court also granted summary judgment for Valley View on the constructive discharge claim.  Based on its ruling that Ms. Hernandez failed to demonstrate sufficiently severe conditions to constitute a hostile work environment, it held she could not prove constructive discharge premised on a claim that her workplace was so intolerable that she had no choice but to resign.

Finally, the district court ruled that Ms. Hernandez's amended complaint showed on its face that the applicable statute of limitations on her retaliation claim had expired, and dismissed it for failure to state a claim.  In doing so, it rejected her argument that the claim related back to her original complaint.

## II.  **STANDARDS OF REVIEW**

Ms. Hernandez's hostile work environment and constructive discharge claims were dismissed on summary judgment.  "We review the grant of judgment de novo, applying the same standards as the district court."  *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court dismissed Ms. Hernandez's retaliation claim under Fed. R. Civ. P. 12(b)(6) as time-barred by the applicable statute of limitations, rejecting her argument that her new claim should relate back to her original complaint under Fed. R. Civ. P. 15(c).  "We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations."  *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010); *see also Garrett v. Fleming*, 362 F.3d 692, 695 (10th Cir. 2004) ("We review de novo the district court's application of Rule 15(c) to undisputed facts, a purely legal interpretation." (internal quotation marks omitted)).

## III.  **DISCUSSION**

### A.  *Hostile Work Environment Claim*

On appeal, Ms. Hernandez contends the district court incorrectly applied the summary judgment standards by failing to construe evidence in the light most

favorable to her as the non-moving party, and by resolving factual issues in favor

of defendants.  She further contends she presented sufficient evidence of a hostile

work environment to withstand Valley View's motion for summary judgment.

We agree.

>    1.    ***Hostile Work Environment Requirements***

Under Title VII, it is "'an unlawful employment practice for an

employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin.'"  *Harris v. Forklift Sys.,*

*Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "This includes

an employee's claims of a hostile work environment based on race or national

origin discrimination."  *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680

(10th Cir. 2007).

We have recognized that "Title VII does not establish a general civility

code for the workplace.  Accordingly, the run-of-the-mill boorish, juvenile, or

annoying behavior that is not uncommon in American workplaces is not the stuff

of a Title VII hostile work environment claim."  *Morris v. City of Colo. Springs*,

666 F.3d 654, 663-64 (10th Cir. 2012) (internal quotes and citations omitted).

"To survive summary judgment on a claim alleging a racially hostile work

environment, [the plaintiff] must show that a rational jury could find that the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that

-12-

is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that the victim "was targeted for harassment because of [her] race or national origin." *Id.* (brackets and internal quotation marks omitted).

"The applicable test for a hostile work environment has both objective and subjective components.  A dual standard asks both whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended," and both must be proved.  *Id.* at 664 (internal quotes and citations omitted).

"[There] is not, and by its nature cannot be, a mathematically precise test" for a hostile work environment claim.  *Harris*, 510 U.S. at 22.  Courts determine whether an environment is hostile or abusive by looking at such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.  "[T]he severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact."  *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (internal quotation marks omitted); *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 798 (10th Cir. 2007) (same).

-13-

2.   *Sufficient Evidence of Hostile Work Environment*

Viewing the record as a whole and in the light most favorable to Ms. Hernandez, we conclude that a rational jury could find that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter her conditions of employment.

A rational factfinder could conclude that Ms. Hernandez experienced more than a "handful" of "sporadic" racially derogatory jokes and comments. Aplt. App. at 613.  During the approximately fourteen months that Mr. Lillis supervised her, Mr. Lillis and Mr. Stillahn repeatedly subjected her to racially insensitive and offensive comments and jokes, including the Mexican-barbeque comment three to five times, the Mexican-tamale comment three or four times, and the black-Latino marriage comment at least once.  In addition, Mr. Lillis accused her family member of being a murderer based on Ms. Hernandez's surname, accused her family of not paying for lunch, and referred to a black cook using a racial epithet.  Ms. Hernandez promptly and frequently complained to her supervisors about the offensiveness of the racial comments.  *See Herrera*, 474 F.3d at 680-81 (noting plaintiff's unheeded complaints of harassment to employer's human resources attorney as evidence that she was subjectively offended).

Ms. Hernandez marshaled sufficient evidence of both objective and subjective offensiveness to withstand summary judgment.  *See Herrera*, 474 F.3d

-14-

at 680-81.  A reasonable jury could find that Ms. Hernandez was offended by the work environment and that a reasonable person likewise would be offended.

       a.    ***District Court's Analysis***

The district court relied on *Bolden*, 43 F.3d at 551, in holding that Ms. Hernandez failed to demonstrate a "steady barrage of opprobrious racial comments."  "In *Bolden*, we held that only two overtly racial comments and one arguably racial remark over the course of the plaintiff's eight years of employment did not constitute pervasive conduct."  *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1414 (10th Cir. 1997).  By our count, Ms. Hernandez presented evidence of at least a dozen racially offensive comments and jokes over the fourteen months Mr. Lillis supervised her in food services.[4]  But "the word 'pervasive' is not a counting measure" and the "trier of fact utilizes a broader contextual analysis."  *Herrera*, 474 F.3d at 680 n.3.

---

[4]Valley View asserts that Ms. Hernandez only established "three incidents with racial overtones that were directed toward her over a six year period." Aplee. Br. at 29-30.  In addition to including the years before Mr. Lillis began working at Valley View, it arrives at this lower number by parsing out the various instances of harassment and excluding some based on its characterization of them as racially neutral or not directed at Ms. Hernandez.  As discussed further below, such parsing ignores the "'totality of the circumstances' test."  *PVNF*, 487 F.3d at 799; *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998) ("Our precedents . . . eschew such a mechanical approach to analyzing hostile work environment claims.).  Indeed, "the very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation."  *Id.*

Considering the frequency, content, and context of the derogatory statements, we conclude that Ms. Hernandez established a genuinely disputed issue of fact as to the pervasiveness of the harassment in her work environment. *See Smith*, 129 F.3d 1415 (holding evidence of six sexually derogatory statements over twenty-three months, some repeated frequently, sufficient to support a finding of pervasive harassment).

The district court, citing *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (holding that vague, conclusory statements are insufficient), said that Ms. Hernandez provided "few specifics" to support her allegations of insensitive jokes and disparate treatment. Aplt. App. at 613. We disagree. Although Ms. Hernandez was not always able to give precise dates, she was often able to narrow the time frame to a particular month or time of year. She provided more specific details than the plaintiff in *Ford*, who only "baldly assert[ed] he was continuously subjected to racial slurs," and provided no record citations to any "content, context or date of such slurs." 222 F.3d at 777. Ms. Hernandez presented specific examples of her supervisors' racial jokes, identified general time frames, and provided the relevant content and context of these comments.

b.   ***Valley View's Arguments***

Valley View argues that many of the alleged incidents were not directed at Ms. Hernandez. Although the record, viewed in the light most favorable to Ms. Hernandez, indicates most of them were directed at her individually or as part

-16-

of the Latino employees, we have held that derogatory comments need not be directed at or intended to be received by the victim to be evidence of a hostile work environment. *See PVNF*, 487 F.3d at 798. The "totality of the circumstances" is "the touchstone of [a hostile work environment] analysis." *Id.* at 799; *see also Harris*, 510 U.S. at 23. "[E]vidence of a general work atmosphere, including evidence of harassment of other racial minorities may be considered in evaluating a claim, as long as [the plaintiff] presents evidence that [she] knew about the offending behavior." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1146 (10th Cir. 2008) (brackets and internal quotation marks omitted).

It is unclear from the record whether Ms. Hernandez heard or was aware of the racially offensive references to the black cook. She testified, however, that she heard all the other racially tinged comments and jokes. And, contrary to Valley View's assertion, the cook references are relevant to her claim whether or not they were directed at her personally. *See McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 925, n.10 (10th Cir. 2001) (holding that comments not directed at plaintiff, including a supervisor who called another worker the n-word, were relevant to the evaluation of hostile work environment claim).

Valley View also argues that three of the incidents were not "racially motivated" and "cannot be considered" in the hostile work environment analysis. Aplee. Br. at 24-25. It characterizes Mr. Lillis's accusation that Ms. Hernandez's son or brother was a murderer was "nothing more than general teasing"; argues

that when Mr. Lillis asked Ms. Hernandez if her family paid for lunch, he might have been motivated simply by payment concerns; and asserts that Mr. Stillahn only "question[ed]"[5] Ms. Hernandez about the mess in the cafeteria because it was his job to ensure cleanliness. *Id.* Even if these incidents could be construed as racially neutral, Valley View's argument fails.

Hostile work environment "harassment must be racial or stem from racial animus." *Tademy*, 614 F.3d at 1139 (brackets and internal quotation marks omitted). But Valley View misconstrues this circuit's precedent in asserting these incidents should be excluded from our analysis. We have long held that "[f]acially neutral abusive conduct can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct." *O'Shea*, 185 F.3d at 1097; *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998) ("Even where the motive behind the alleged conduct was not the plaintiff's [race or national origin], the court may still consider that conduct relevant when evaluating whether ambiguous conduct was in fact

---

[5]Valley View's sanitized word choice falls short of conveying Ms. Hernandez's evidence, which is that Mr. Stillahn said the "place looked like shit," "was angry," "started screaming," "pushed the cart and kicked the door," and that Ms. Hernandez "was afraid" and "tried to stay away from him." Aplt. App. at 238.

[racially]-motivated or whether [racially]-motivated conduct was so severe [or] pervasive as to create Title VII liability.").

> This is because what is important in a hostile environment claim is the *environment*, and [racially]-neutral harassment makes up an important part of the relevant work environment.  Conduct that appears [racially]-neutral in isolation may in fact be [race]-based, but may appear so only when viewed in the context of other [race]-based behavior.  Thus, when a plaintiff introduces evidence of both [race]-based and [race]-neutral harassment, and when a jury, viewing the evidence in context, reasonably could view all of the allegedly harassing conduct . . . as the product of [racial] hostility, then it is for the fact finder to decide whether such an inference should be drawn.

*Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (citation and internal quotation marks omitted) (holding that plaintiffs "can use a substantial amount of arguably [racially]-neutral harassment to bolster a smaller amount of [race]-based conduct on summary judgment").

Valley View's argument that these three incidents were not based in racial animus "should take place before a jury that will have the opportunity to evaluate the evidence, demeanor, and candor of witnesses."  *Tademy*, 614 F.3d at 1146.  Ms. Hernandez testified she was upset and offended by Mr. Lillis's accusation that her family had not paid for lunch and that her son or brother was a murderer.  She was so afraid of Mr. Stillahn's anger when he blamed her for the kitchen mess that she tried to avoid him and was afraid to return.  These incidents must be viewed in context and "cannot simply be discarded . . . but must be weighed on the side of reasonable inferences."  *McCowan*, 273 F.3d at 925 n.10.

* * *

In sum, a reasonable jury could conclude that "[Ms. Hernandez's] workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Herrera*, 474 F.3d at 680 (internal quotation marks omitted).

B. *Constructive Discharge Claim*

Ms. Hernandez claims she was constructively discharged as a result of the hostile work environment combined with working conditions so unreasonable she could not return to work in the food services department when her FMLA leave expired. "[A] hostile-environment constructive discharge claim entails something more [than conduct that amounts to actionable harassment]: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders,* 542 U.S. 129, 147 (2004). Further, "an employer is strictly liable for supervisor harassment that culminates in a tangible employment action," and a constructive discharge that is precipitated by an official act qualifies as a tangible employment action. *Id.* at 137, 148-49 (internal quotation marks omitted).

Ms. Hernandez bases her constructive discharge claim on Valley View's (1) denying her July 2007 request to be transferred to any department not under the supervision of Mr. Lillis and Mr. Stillahn; (2) deciding to fire her the same

day she reported her discrimination allegations by documenting as-yet undocumented performance issues; (3) placing her on unpaid leave when she did not return to work the day after her suspension and after failing to tell her it was only a half-day suspension; (4) preventing her from working until a meeting ten days after her suspension; and (5) presenting her, at the end of her FMLA leave, with new, after-the-fact performance criticisms and again denying her request not to work under the supervision of her harassing supervisors.

The district court ruled that "[h]aving failed to produce evidence sufficient to make out a claim of hostile work environment racial harassment, [Ms. Hernandez] perforce cannot sustain the more onerous burden of proving a racial or national origin discrimination claim premised on constructive discharge." Aplt. App. at 614. In light of our holding that Ms. Hernandez presented sufficient evidence of a racially hostile work environment to withstand summary judgment, and because the district court's dismissal of her constructive discharge claim is based on its summary judgment decision on her hostile work environment claim, the district court's dismissal of her constructive discharge claim must also be reversed and remanded for further consideration.

C. *Retaliation Claim*

Title VII requires a plaintiff claiming employment discrimination to file a complaint within 90 days of receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). Ms. Hernandez filed a timely complaint at the end of

the 90-day limitations period.  Five months later, she amended her complaint to add a new claim for retaliation in violation of Title VII.  The parties do not dispute that the retaliation claim was filed well beyond § 2000e-5(f)(1)'s deadline.  Instead, Ms. Hernandez argued, in response to Valley View's Rule 12(b)(6) motion to dismiss, that her newly added claim related back to her timely original complaint under Fed. R. Civ. P. 15(c).

In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to "relate back" to the conduct alleged in the timely original complaint.  Specifically, Rule 15(c)(1)(B) provides that an amendment "relates back" to the date of the "original pleading" if the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Interpreting this language, the Supreme Court has held that relation back is improper when the amended claim "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

The district court ruled that Ms. Hernandez's amended complaint did not relate back because the retaliation claim raised new and discrete allegations that were not pled in her original complaint.  Based on our review of the original and amended complaints, we agree.  Her retaliation claim is based on factual allegations that were new and discrete from the facts she originally pled.

-22-

*See Jones v. Bernanke*, 557 F.3d 674-75 (D.C. Cir. 2009). Indeed, Ms. Hernandez does not argue otherwise. Rather, she argues that Valley View had notice of the new claim because she had included retaliation in her EEOC charge.

Defendant's notice in her EEOC complaint that she might file a retaliation claim is unavailing because Rule 15(c)(1)(B) states that a pleading relates back only if the new claim arose "out of the conduct, transaction, or occurrence" pled in the original pleading. In *Mayle*, the Court held that "[t]he 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case." 545 U.S. at 655. Thus, Ms. Hernandez's argument that her new claim relates back because it was included in her EEOC charge is without merit.

## IV.  CONCLUSION

Ms. Hernandez marshaled sufficient hostile work environment evidence to withstand summary judgment. We therefore reverse the district court's entry of summary judgment on that issue and also on the issue of constructive discharge. We affirm dismissal of Ms. Hernandez's retaliation claim as time-barred.

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                    June 26, 2012                    Douglas E. Cressler
Clerk of Court                                                           Chief Deputy Clerk

Mr. Theodore G. Hess
Hess & Schubert, LLP
804 Colorado Avenue
Second Floor
Glenwood Springs, CO 81601

**RE:**      **11-1244, Hernandez v. Valley View Hospital, et al**
             Dist/Ag docket: 1:10-CV-00455-REB-MJW

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is
permitted unless the court enters an order requiring a response. If requesting rehearing en
banc, the requesting party must file 18 paper copies with the clerk, in addition to
satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40,
and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker
Clerk of the Court

cc:    Allison R. Cohn
        Joshua Becker Kirkpatrick
        Michael Craig Santo


EAS/lg