IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00455-REB-MJW

TERESA HERNANDEZ,

Plaintiff,

v.

VALLEY VIEW HOSPITAL ASSOCIATION and
MORRISON MANAGEMENT SPECIALISTS, INC. d/b/a MORRISON HEALTHCARE
FOOD SERVICES,

Defendants.

---

**RECOMMENDATION  ON
DEFENDANT VALLEY VIEW'S  MOTION FOR PARTIAL SUMMARY JUDGMENT
(Docket No. 174)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 2)

issued by Judge Robert E. Blackburn on March 1, 2010.

**Procedural History**

This matter was commenced on February 26, 2010.  On April 26, 2011, Judge

Blackburn entered an Order (Docket No. 143) granting defendants' Motion for Summary

Judgment (Docket No. 65).  Specifically, Judge Blackburn's Order granted summary

judgment for defendants on plaintiff's claims of hostile work environment and

constructive discharge, and dismissed plaintiff's retaliation claim as time-barred.

Plaintiff filed a Notice of Appeal (Docket No. 146) on May 26, 2011.

On June 26, 2012, the Tenth Circuit issued an Opinion (Docket No. 166;

2

Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950 (10th Cir. 2012)) reversing entry

of summary judgment on plaintiff's hostile work environment claim and constructive

discharge claim.  The court found that plaintiff had "established a genuinely disputed

issue of fact as to the pervasiveness of the harassment in her work environment."

Hernandez, 684 F.3d at 959.  Further, the court found that because dismissal of

plaintiff's constructive discharge claim was based the summary judgment decision on

plaintiff's hostile work environment claim, the dismissal of the constructive discharge

claim likewise had to be reversed.  Id. at 961.  The dismissal of plaintiff's retaliation

claim was affirmed.  The Tenth Circuit issued the Mandate (Docket No. 167) on July 23,

2012.

On August 20, 2012, this court held a status conference in light of the Tenth

Circuit's opinion.  The parties agreed to submit briefs specifically addressing the

constructive discharge claim.

**Pending Motion**

Now before the court is Defendant Valley View's Motion for Partial Summary

Judgment (Docket No. 174).  Valley View argues plaintiff's claim for constructive

discharge fails because the facts alleged by plaintiff do not establish that Valley View

deliberately made or allowed her working conditions to become so intolerable that

plaintiff had no other choice but to quit.  Rather, Valley View argues that plaintiff's

employment ended when she voluntarily failed to return to work following an approved

leave.

The court has carefully considered the motion for Defendant Valley View's

Motion for Partial Summary Judgment (Docket No. 174) and plaintiff's Brief on the

3

Constructive Discharge Issue (Docket No. 173).  In addition, the court has taken judicial

notice of the court's file, and has considered the applicable Federal Rules of Civil

Procedure and case law.  The court has also carefully considered the Tenth Circuit's

opinion.  The court now being fully informed makes the following findings of fact,

conclusions of law, and recommendation.

Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial."  Robertson v. Bd. of Cnty. Comm'rs of the Cnty. of

Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.

1992)).  "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with

specific facts showing the existence of a genuine factual issue to be tried . . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149

F. Supp. 2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

nonmoving party points to must be *admissible*.  The nonmoving party does not have to

produce evidence in a form that would be admissible at trial, but the content or

4

substance of the evidence must be admissible.  Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

a third party's description of a witness supposed testimony is not suitable grist for the

summary judgment mill."  Adams v. Am. Guarantee & Liability Ins. Co., 233 F.3d 1242,

1246 (10th Cir. 2000) (internal citations and quotations omitted).

     "Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response."  Southway, 149 F. Supp. 2d at 1273.  "The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict."  Id.

"Unsupported allegations without 'any significant probative evidence tending to support

the complaint' are insufficient . . . as are conclusory assertions that factual disputes

exist."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting

White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must

be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for

summary judgment."  Id. at 1274.  "Summary judgment should not enter if, viewing the

evidence in a light most favorable to the non-moving party and drawing all reasonable

inferences in that party's favor, a reasonable jury could return a verdict for that party."

Id. at 1273.

**Constructive Discharge**

     "A constructive discharge occurs when a reasonable person . . . would view her

working conditions as intolerable and would feel that she had no other choice but to

quit."  Tran v. Trustees of State Colleges in Colo., 335 F.3d 1263, 1270 (10th Cir. 2004).

5

"In determining whether an employee's working conditions would cause such feelings in a reasonable person, [the court] appl[ies] an objective test under which neither the employee's subjective view of the situation, nor [his] employer's subjective intent with regard to discharging [him], are relevant." Id. 1270.  "The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." Id.

"Further, conduct which meets the definition of a 'tangible employment action' or an 'adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." Id. at 1270-71.  "Courts evaluate the voluntariness of an employee's resignation using 'an objective, totality of the circumstances standard.'" Green v. Potter, 2011 WL 2693523, at *3 (D. Colo. July 12, 2011) (quoting Fischer v. Forestwood Co., 525 F.3d 972, 980 (10th Cir. 2008)).  "The plaintiff has a substantial burden to prove a constructive discharge claim . . . ." Narotzky v. Natrona Cnty. Memorial Hosp. Bd. Of Trustees, 610 F.3d 558, 565 (10th Cir. 2010).  "Ultimately, '[a] resignation will be involuntary and coerced when the totality of the circumstances indicate [the lack of an] opportunity to make a free choice.'" Id. at 566 (quoting Parker v. Board of Regents of Tulsa Jr. College, 981 F.2d 1159, 1162 (10th Cir. 1992)).

In other words, the court must determine "whether a jury question exists as to the voluntariness" of the plaintiff's departure from his or her employer. Parker, 981 F.2d at 1162.  Among the factors used to determine the voluntariness of an employee's resignation are "(1) whether the employee was given some alternative to resignation; (2)

6

whether the employee understood the nature of the choice he was given; (3) whether

the employee was given reasonable time in which to choose; and (4) whether he was

permitted to select the effective date of resignation." Id.

Valley View acknowledges that the Tenth Circuit found plaintiff had "marshaled

sufficient hostile work environment evidence to withstand summary judgment."

Hernandez, 684 F.3d at 961.  However, Valley View correctly points out that a finding of

a hostile work environment does not necessarily imply there was a constructive

discharge.  See Bennett v. Quark, Inc., 258 F.3d 1220, 1229 (10th Cir. 2001) (reversed

on other grounds) (stating that a finding of constructive discharge cannot be based

solely on a discriminatory act).

Valley View argues that it is undisputed that plaintiff's employment ended when

she voluntarily chose not to return from FMLA leave.  Valley View contends that, after

plaintiff's complaints were investigated, plaintiff chose to voluntarily resign rather than

return to her position or to transfer to another position within the hospital.  Plaintiff, on

the other hand, argues that there is a material factual dispute as to whether plaintiff was

ultimately offered the chance to transfer to another position within the hospital.  Further,

although plaintiff acknowledges that she was given the opportunity to return to her job,

she contends that she effectively had no choice but to resign because she feared

further humiliation and abuse if she returned.

First, as to Valley View's offer to allow plaintiff to transfer to another position

within the hospital, plaintiff states in her affidavit that it was made clear that plaintiff's

only option was to return to her former position.  Specifically, plaintiff states that at the

July 30, 2007 meeting, HR Director Daniel Biggs said "he would not be able to transfer

7

[plaintiff] to a different position at that time."  Docket No. 173-1, at ¶ 19.  Further, at the

October 12, 2007 meeting, plaintiff states that she "begged Mr. Biggs for a job in

another department," but Mr. Biggs only offer was for plaintiff to return to her former

position in the cafeteria.  Docket No. 173-1, at ¶ 22.  Accordingly, the court finds that

there is a material dispute as to whether plaintiff was offered an alternative to returning

to her former position.

Second, as to the prospect of returning to her position in the cafeteria, plaintiff

states in her affidavit that the "only choice [Mr. Biggs] gave me was to return to the

supervision of Mark Lillis and Nick Stillahn, the same bigoted supervisors who fired me."

Docket No. 173-1, at ¶ 23.  Plaintiff thus admits that she was offered her position back,

but due to the extent of the humiliation and abuse she had previously suffered, plaintiff

argues there is a material dispute as to whether the conditions she faced were

intolerable, and she therefore had no choice but to resign.

The Tenth Circuit's opinion listed several examples of racially derogatory jokes

and comments made about Latinos and Mexicans by Mr. Lillis and Mr. Stillahn.  See

Hernandez, 684 F.3d at 954.  The court found that a reasonable jury could conclude

that plaintiff's "workplace was permeated with discriminatory intimidation, ridicule, and

insult, that was sufficiently severe and pervasive to alter the conditions of her

employment and create and abusive work environment."  Id. at 960 (internal alterations

omitted).

Taken in a light most favorable to plaintiff, this court finds that a reasonable jury

could conclude, considering the circumstances as detailed in the Tenth Circuit's opinion,

that plaintiff had no choice but to resign.  While plaintiff's resignation was technically

8

voluntary (in that she was offered her old job back), under the circumstances, a

reasonable jury could find that the conditions she faced were so intolerable that she had

no choice to resign.  See Tran, 335 F.3d at 1270.   This, coupled with the existence of

disputed facts as to whether plaintiff was offered other positions outside of the cafeteria,

demonstrates that, taking the evidence in a light most favorable to plaintiff, a reasonable

jury could return a verdict in favor of plaintiff's constructive discharge claim.

**Recommendation**

       **WHEREFORE,** for the foregoing reasons, it is hereby

       **RECOMMENDED** that Defendant Valley View's Motion for Partial Summary

Judgment (Docket No. 174) be **DENIED.**

       **NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives de novo review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse,**

**91 F.3d 1411, 1412-13 (10th Cir. 1996).**

9

Date:  January 28, 2013                    s/ Michael J. Watanabe
           Denver, Colorado                     Michael J. Watanabe
                                                         United States Magistrate Judge